# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00578-CV

**Health Enrichment and Longevity Institute, Inc. d/b/a Brazos Oaks Personal Care Center; and Linda S. Milam, Appellants**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. GV300269, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Health Enrichment and Longevity Institute, Inc. d/b/a Brazos Oaks Personal Care Center ("Brazos Oaks") and Linda S. Milam appeal from a judgment after a bench trial assessing civil penalties against them, awarding attorney's fees to appellee the State of Texas, and issuing a permanent injunction prohibiting them from engaging in certain conduct. In nine issues, appellants contend that the district court erred in (i) allowing the Attorney General's office to bring this action against them; (ii) depriving them of their constitutional right to a jury trial; (iii) requiring this case to be tried in Travis County instead of Brazos County; (iv) limiting them to one hour to present their case at trial; (v) rendering judgment against Linda Milam individually; (vi) issuing a permanent injunction against them; (vii) assessing a civil penalty against them; and (viii)

awarding attorney's fees to the State. Because we do not find reversible error in any of these rulings, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Brazos Oaks is an assisted living facility in Bryan, Texas, that has been licensed by the Texas Department of Human Services ("DHS") since 1994. Dr. Linda S. Milam is its president and sole owner. With Brazos Oaks's annual license due to expire on November 2, 2002, at some point in October 2002 appellants mailed a license renewal application and check to a DHS office in Austin. The return receipt card showed that the DHS office received the application on November 4, 2002. A DHS representative testified at trial that for an application to be timely, it must be received by DHS forty-five days before the license expires. 40 Tex. Admin. Code § 92.15(b) (2004).[1] She further testified that an application will also be timely if the DHS Long-Term Care-Regulatory Facility Enrollment Section, which issues license renewals, receives the application, postmarked by the filing deadline, within fifteen days of the postmark. *Id.* § 92.15(c) (2004). That office did not receive the application, which, in any event, was incomplete, until November 25, 2002. DHS treated the submission as a new application instead of a renewal because it was incomplete and untimely.

On December 10, 2002, DHS requested that the Attorney General file suit against appellants for operating an unlicensed assisted living facility. The State filed suit, including a request for a temporary injunction, against appellants on January 31, 2003. Appellants filed a motion

---

[1] Because the pertinent provisions of the administrative code have not changed since the subject of this suit arose, for convenience we will refer to the current code provisions.

to transfer venue to Brazos County, where Brazos Oaks is located, and, subject to the motion to transfer venue, also filed an original answer and jury demand. In March, the State set a hearing on its request for a temporary injunction for April 24. The State then canceled the hearing after DHS issued a license to Brazos Oaks on April 17. In late April, counsel for the State called the court coordinator to determine whether appellants had paid a jury fee. Upon learning that no jury fee had been paid, the State requested that the case be set for a three-hour, non-jury trial on June 12.

At some point thereafter, counsel for appellants discovered that a jury fee had not been paid[2] and paid the fee on May 16. Appellants then filed a motion to strike the non-jury trial setting, which the district court overruled at the June 5 hearing on the motion. The next day, appellants filed in this Court a petition for writ of mandamus against the district court, which was denied on June 11.[3] On June 12, the day of trial, appellants moved for a continuance and for the Attorney General to show authority for bringing the suit. Counsel for appellants also stated that she did not believe that the case could be tried in three hours. The district court denied appellants' motions.

The case proceeded to trial that day with each side allotted one hour to present its evidence and arguments. At the end of trial, the district court found that Brazos Oaks had operated without a license. The court issued a permanent injunction, assessed $20,000 in civil penalties against appellants, and awarded $20,000 in attorney's fees to the State, with an additional sliding

---

[2] Counsel for appellants stated in argument at trial that in the course of investigating embezzlement by one of her employees she discovered a jury fee had not been paid.

[3] *In re Health Enrichment & Longevity Inst., Inc. d/b/a Brazos Oaks Personal Care Ctr.*, No. 03-03-00317-CV (Tex. App.—Austin Jun. 11, 2003, orig. proceeding) (not designated for publication).

scale of fees for appeals to this Court and the supreme court. At appellants' request, the district court also issued findings of fact and conclusions of law. Appellants filed a motion for new trial and/or remittitur, which was overruled by operation of law.

## ANALYSIS

### Authority of the Attorney General

In their first issue, appellants urge that the district court erred in denying their motion that the Attorney General show authority for bringing suit. Appellants filed this motion pursuant to rule 12 of the Texas Rules of Civil Procedure. Under rule 12, the "notice of the motion shall be served upon the challenged attorney at least ten days before the hearing on the motion." Tex. R. Civ. P. 12. Appellants served the motion upon counsel for the Attorney General on the day of trial.

A district court may "in its discretion" allow an act to be done after expiration of time "where good cause is shown for the failure to act." Tex. R. Civ. P. 5. When reviewing matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). We may reverse a trial court under this standard only when we find that "the court acted in an unreasonable or arbitrary manner," *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991), or "without regard for any guiding rules or principles." *Owens Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (quoting *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995)). The trial court does not abuse its discretion if some evidence reasonably supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)).

4

The district court asked appellants' counsel if there was some reason why the motion was not filed before docket call the previous week, as required by the local rules. *See* Travis County (Tex.) Civ. Dist. Ct. Loc. R. 4.1 ("Except for motions in limine and motions for continuance based on new circumstances, all exceptions and all pre-trial motions and pleas in every case shall be presented and heard before the announcement docket begins."). Appellants' counsel explained that she had filed the motion to strike the non-jury setting the week before and that she did not want to go forward with the rule 12 motion, which requested affirmative relief, because in doing so appellants would waive their venue argument. The district court found that appellants had no good cause for having waited until the day of trial to file the motion and denied the motion. Because some evidence reasonably supports the trial court's decision, we do not find that the trial court abused its discretion in denying appellants' motion that the Attorney General show authority to bring suit. Accordingly, we overrule appellants' first issue.

### *Right to a Jury Trial*

In their second issue, appellants assert that the district court, in denying their motion to strike the non-jury trial setting, deprived them of their constitutionally protected right to a jury trial. *See* Tex. Const. art. I, § 15. To invoke the right to a trial by jury in a civil case, a party must first comply with the requirements of Texas Rule of Civil Procedure 216. Tex. R. Civ. P. 216. Rule 216(a) provides: "No jury trial shall be had in any civil suit unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance." Tex. R. Civ. P. 216(a). The fee also must be paid within the same thirty-day deadline. Tex. R. Civ. P. 216(b). In the absence of a timely

request or payment of the fee, it is within the trial court's discretion to deny a jury trial. *Martin v. Black*, 909 S.W.2d 192, 197 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (citing *Huddle v. Huddle*, 696 S.W.2d 895, 895 (Tex. 1985) (op. on reh'g)).

Appellants rely on *General Motors Corp. v. Gayle*, which stated that "[e]ven where a party does not timely pay the jury fee, courts have held that a trial court should accord the right to jury trial if it can be done without interfering with the court's docket, delaying the trial, or injuring the opposing party." 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding). In *Gayle*, General Motors filed a motion for continuance after discovering that the jury fee had not been paid. *Id.* at 471. The trial court denied the motion although conceding that the case was not ready for trial and having "no expectation of reaching the heart of the case for some weeks or months." *Id.* at 477. Because of the "particular and unusual circumstances," the supreme court held that the trial court had abused its discretion. *Id.*

Here, appellants included a jury demand in their original answer, which they filed more than thirty days before trial. Counsel for appellants also presumed that the jury fee was paid at the same time. In late April, counsel for the State called the court coordinator's office to determine whether the jury fee had been paid. Upon discovering that the fee had not been paid, counsel for the State set the case for a non-jury trial on June 12.[4] On May 16, twenty-seven days before the trial, counsel for appellants paid the jury fee. Appellants did not pay the jury fee within

---

[4] Although the Texas Lawyer's Creed states, "I will not arbitrarily schedule a deposition, Court appearance, or hearing until a good faith effort has been made to schedule it by agreement," Texas Lawyer's Creed—A Mandate for Professionalism, III(5), it is undisputed that counsel for the State did not confer with counsel for appellants before setting the case for trial.

6

the thirty-day deadline prescribed by rule 216. Appellants then filed a motion to strike the non-jury trial setting.

The court noted on the docket sheet for the motion to strike hearing that a record was waived. In the absence of a reporter's record, "we indulge every presumption in favor of the trial court's findings." *Bryant v. United Shortline, Inc. Assurance Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998). On the facts before us, we conclude that the district court did not abuse its discretion in denying appellants' motion to strike the non-jury trial setting. Accordingly, we overrule appellants' second issue.

*Venue*

In their third issue, appellants contend that the district court erred in requiring the case to be tried in Travis County. When the State seeks injunctive relief concerning a licensing violation, venue is proper in the county of the assisted living facility or in Travis County. Tex. Health & Safety Code Ann. § 247.044(e) (West 2001). Appellants requested a transfer of venue to Brazos County under section 15.002(b) of the civil practice and remedies code, which grants a court discretion to transfer venue from one proper county to another proper county for the convenience of the parties. Tex. Civ. Prac. & Rem. Code Ann. § 15.002(b) (West 2002). In its conclusions of law, the district court held that venue was proper in Travis County. A court retains discretion in deciding whether to transfer from one permissive venue to another, *id.*, and its decision to deny a transfer under section 15.002(b) is not grounds for appeal or reversible error. *Id.* § 15.002(c) (West 2002). Based on the record before us, we cannot say that the district court abused its discretion in denying appellants' motion to transfer venue. Accordingly, we overrule appellants' third issue.

7

*Time Limits at Trial*

In their fourth issue, appellants urge that the district court violated their procedural and substantive due process rights by limiting them to one hour to present their case. The trial court has "inherent power" to control the disposition of the cases on its docket "with economy of time and effort for itself, for counsel, and for litigants." *Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).

Counsel for appellants stated at the beginning of trial, when presenting motions, that she did not believe the case could be tried in three hours. The district court allotted each side one hour to present its case. During appellants' opening statement, the district court informed counsel for appellants that she had used fifteen minutes of the hour. The State then presented its case, during which appellants had an opportunity to cross-examine the State's witnesses. Appellants presented their case, then both sides presented closing arguments. Assuming that the effect of the time limit was to exclude evidence, error may not be predicated on a ruling excluding evidence unless a party makes known to the court the substance of the evidence by an offer of proof. Tex. R. Evid. 103(a)(2). At no point in the trial did appellants make an offer of proof concerning evidence excluded because of time constraints. We therefore have nothing to review. We overrule appellants' fourth issue.

*Issuance of Permanent Injunction*

In their sixth issue, appellants contend that there is no evidence to support the district court's issuance of a permanent injunction prohibiting appellants from operating Brazos Oaks

8

without a license, denying DHS agents access to the facility, preventing transfers of residents if required, and failing to care for residents if relocation is required. A party requesting injunctive relief must show the existence of a wrongful act, imminent harm, irreparable injury, and the absence of an adequate remedy at law. *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 853 (Tex. App.—Austin 2002, pet. denied). We review a trial court's issuance of injunctive relief for an abuse of discretion. *Operation Rescue-Nat'l v. Planned Parenthood*, 975 S.W.2d 546, 560 (Tex. 1998).

Appellants argue that a permanent injunction is not warranted by the facts because they never intended to operate without a license. However, "[w]here the facts conclusively show a party is violating the substantive law it becomes the duty of the court to enjoin the violation and in such case there is no discretion to be exercised." *Priest v. Texas Animal Health Comm'n*, 780 S.W.2d 874, 876 (Tex. App.—Dallas 1989, no writ). A district court, upon petition by DHS and a finding that a person is violating the standards or licensing requirements under chapter 247 of the health and safety code, may by injunction prohibit that person from continuing the violation, restrain the operation of an assisted living facility without a license, or grant any other injunctive relief warranted by the facts. Tex. Health & Safety Code Ann. § 247.044(b) (West 2001). In its findings of fact, the district court found that Brazos Oaks had operated without a license from November 3, 2002 through April 17, 2003. A person may not operate an assisted living facility without a license. *Id.* § 247.021(a) (West 2001). Assisted living facilities must renew their licenses annually. 40 Tex. Admin. Code § 92.15 (2004).

Appellants contend that the only requirement in chapter 247 of the health and safety code for renewing a license is that the "license holder must submit to the department the annual

9

license renewal fee." Tex. Health & Safety Code Ann. § 247.023(b) (West 2001). However, it is within the DHS's authority to adopt rules necessary to implement the chapter, including requirements for renewal of a license. *Id.* § 247.025 (West 2001). Accordingly, DHS has adopted procedures for renewing the licenses of assisted living facilities. 40 Tex. Admin. Code § 92.15.

The evidence adduced at trial supports the finding that Brazos Oaks operated without a license. A DHS representative testified, and appellants do not dispute, that Brazos Oaks's license expired November 2, 2002. A DHS office received appellants' incomplete application on November 4, 2002, after expiration of the license. For an incomplete application to be timely, the party must file the application with DHS, with an explanatory letter, forty-five days *before* the license expires. *Id.* § 92.15(b)(2). An application will also be timely if the DHS Long-Term Care-Regulatory Facility Enrollment Section, which issues license renewals, receives the application, postmarked by the filing deadline, within fifteen days of the postmark. *Id.* § 92.15(c). The DHS representative further testified that the appropriate office did not receive the application until November 25, 2002. She also testified that DHS sent three letters to the owner of Brazos Oaks requesting documents needed to complete the application.

Appellants do not dispute that they continued to operate Brazos Oaks between November 2, 2002 and April 17, 2003, when DHS issued a new license to the facility. By establishing that Brazos Oaks operated without a license for more than five months, the State demonstrated the existence of a wrongful act, imminent harm, irreparable injury, and absence of an adequate remedy at law. *Seton Health Plan*, 94 S.W.3d at 853. The further injunctions concerning the residents and DHS agents' access to the facility would be necessary to protect the safety of the

residents. Accordingly, we cannot say that the district court abused its discretion in issuing the permanent injunction. We overrule appellants' sixth issue.

### *Assessment of Civil Penalties*

In their seventh and eighth issues, appellants contend that the evidence is legally and factually insufficient to support the district court's assessment of $20,000 in civil penalties against appellants for violation of licensure requirements. In this case, the district court issued findings of fact and conclusions of law. We attach to findings of fact the same weight that we attach to a jury verdict upon jury questions. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review findings of fact for legal and factual sufficiency of the evidence by the same standards used to review jury findings. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 195 (Tex. App.—Austin 1992, no writ). We review challenges to conclusions of law *de novo* as legal questions, examining the legal conclusions drawn from the facts to determine their correctness. *See Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist.*, 981 S.W.2d 483, 485 (Tex. App.—Austin 1998, no pet.). We will uphold the trial court's conclusions if any legal theory supported by the evidence can sustain the judgment. *See Westech Eng'g*, 835 S.W.2d at 196; *Simpson v. Simpson*, 727 S.W.2d 662, 664 (Tex. App.—Dallas 1987, no writ).

As discussed above, the evidence adduced at trial demonstrates that Brazos Oaks operated without a license from November 2, 2002 to April 17, 2003. If a person operates a facility without a license, in violation of health and safety code section 247.021, the district court may assess civil penalties of not less than $1,000 and not more than $10,000 for each violation. Tex. Health &

Safety Code Ann. § 247.045(a)-(c) (West 2001).[5] Each day of operating without a license constitutes a separate violation. *Id.* § 247.045(c). Thus, it was well within the district court's statutory authority to impose $20,000 in civil penalties for operating without a license for more than five months. Because the evidence is legally and factually sufficient to support the imposition of civil penalties, we overrule appellants' seventh and eighth issues.

***Attorney's Fees Award***

In their ninth issue, appellants assert that the district court erred in awarding $20,000 in attorney's fees to appellee. The standard of review of a trial court's award granting attorney's fees is sufficiency of the evidence. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991). An award of attorney's fees must be based on some statutory or contractual authority. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 1997); *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992). The determination of the reasonableness of the fees is a question for the finder of fact. *Sterling*, 822 S.W.2d at 12. In reviewing the reasonableness of an award of attorney's fees, the reviewing court should consider: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services;

---

[5] Under the code construction act, which applies to the health and safety code, Tex. Health & Safety Code Ann. § 1.001 (West 2001), "person" includes a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." Tex. Gov't Code Ann. § 311.005(2) (West 1998). Therefore, "person" under section 247.045 of the health and safety code encompasses Brazos Oaks, a corporation.

(4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

The parties agree that section 247.045 of the health and safety code permits an award of attorney's fees to the State if the court has assessed a civil penalty. *See* Tex. Health & Safety Code Ann. § 247.045(e) (West 2001). Lowell Keig, chief of the Elder Law and Public Health Division of the Attorney General's office, testified about the fees requested. His testimony included the usual and customary hourly rates for the attorneys and support staff, the services performed, and the reasonableness and necessity of the fees. Supporting this testimony was an exhibit listing the name, position, market rate, and time spent for each attorney and legal assistant who worked on the case. The State requested $30,731.25 in fees, $20,000 of which the district court awarded. Given the statutory authority and evidence presented, we cannot say that the district court erred in awarding attorney's fees to the State. Accordingly, we overrule appellants' ninth issue.

### Judgment Against Linda Milam, Individually

In their fifth issue, appellants contend that the district court erred in rendering judgment against Linda Milam, individually, because there is no evidence that she committed any act described in the judgment. We review a no-evidence challenge by considering all of the record evidence in the light most favorable to the prevailing party, indulging every reasonable inference in

13

that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998); *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). We must sustain a no-evidence challenge when the record discloses that no more than a scintilla of evidence supports finding a vital fact or that the evidence conclusively establishes the opposite of a vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995).

The district court found that Linda Milam was the sole owner of Brazos Oaks during the period that it operated without a license. Supporting this finding is the license renewal application of Brazos Oaks, which lists "Dr. Linda S. Milam" as the sole owner of "Health Enrichment & Longevity Institute, Inc." and the "owner/applicant" for the facility. The evidence demonstrates that Brazos Oaks submitted an incomplete and untimely application. The evidence further demonstrates that Linda Milam, as sole owner and applicant, was responsible for the application. As discussed above, the incomplete and untimely application led to Brazos Oaks operating without a license for a period of time.

Upon finding that a person is violating the licensing requirements under chapter 247, a district court may by injunction prohibit that person from continuing to violate the licensing requirements. Tex. Health & Safety Code Ann. § 247.044. If a person operates a facility without a license, in violation of health and safety code section 247.021, the district court may also assess civil penalties of not less than $1,000 and not more than $10,000 for each violation. *Id.* § 247.045(a)-(c). Each day of operating without a license constitutes a separate violation. *Id.*

14

§ 247.045(c). The record raises more than a scintilla of evidence to support imposition of an injunction and assessment of civil penalties and attorney's fees against Linda Milam as sole owner of Brazos Oaks. Accordingly, we do not find that the district court erred in rendering judgment against Linda Milam, individually. We overrule appellants' fifth issue. Having overruled all of appellants' issues, we affirm the judgment of the district court.

## CONCLUSION

We do not find that the district court abused its discretion in denying appellants' motion that the Attorney General show authority to bring suit, because some evidence reasonably supports the district court's decision. We further do not find that the district court abused its discretion in overruling appellants' motion to strike the non-jury trial setting. It was within the district court's discretion to retain venue in Travis County, and we cannot say that the district court abused this discretion. As to appellants' challenge of the time limits at trial, we have nothing to review because appellants made no offer of proof of evidence excluded.

Although difficulties in communication between the facility and DHS, coupled with the confluence of circumstances confronted by appellants' counsel, may have led to a harsh result, the evidence adduced at trial supports the district court's finding that Brazos Oaks operated without a license. Accordingly, we do not find that the district court erred in issuing a permanent injunction and assessing $20,000 in civil penalties against Brazos Oaks. We further do not find that the district court erred in rendering judgment against Linda Milam, as sole owner of Brazos Oaks and applicant for the renewal of its license. Finally, we cannot say that the district court erred in awarding $20,000

15

in attorney's fees, plus additional fees for appeal, to the State.  Having overruled all of appellants'

issues, we affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   June 10, 2004